IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **CHARLIE HOLDER and**<br>**SHARE HOLDERS, LLC, d/b/a ADVANTAGE**<br>**TESTING**<br>    **PLAINTIFFS** | **CIVIL ACTION NO:** |
| **VERSUS** | **JUDGE:** |
| **THOMAS GRUENBECK, INDIVIDUALLY;**<br>**GRUENBECK AND VOGELER; KING CONSULTING**<br>**GROUP, LLC; BURT KING, INDIVIDUALLY;**<br>**ASA JOHNSON, INDIVIDUALLY; BAFF**<br>**CONSULTANTS, INC.; WORLDWIDE CAPITAL**<br>**MANAGEMENT; FARHAN A. MIRZA, INDIVIDUALLY;**<br>**SALMAN VAKIL, INDIVIDUALLY; ABC**<br>**CORPORATIONS 1-5; and DOES 1-5.**<br>    **DEFENDANTS** | **MAGISTRATE JUDGE:** |

**COMPLAINT AND JURY DEMAND**

**COME NOW**, Plaintiffs, Charlie Holder, and Share Holders, LLC d/b/a Advantage Testing, by and through counsel of record, and file this their Complaint against Defendants, Thomas Gruenbeck, Individually, Gruenbeck And Vogeler, King Consulting Group, LLC, Burt King, Individually, Asa Johnson, individually, Baff Consultants, Inc., Worldwide Capital Management, Farhan A. Mirza, individually, Salman Vakil, individually, ABC Corporations 1-5, and Does 1-5, and in support thereof, states as follows:

**I. Parties**

1.     Plaintiff, Charlie Holder, is an adult resident citizen of Vidor, Texas.

2.     Plaintiff, Share Holders, LLC d/b/a Advantage Testing, is a business organized under the laws of the State of Delaware, with its principal place of business located at 2750 Interstate 10 East, Beaumont, Texas 77703. The sole member of Advantage Testing is Plaintiff Charlie Holder.

{L0573690.1}

3. Defendant, Thomas Gruenbeck, is an adult resident citizen of Orange County, California, and can be served with process at 23120 Alicia Pkwy, #223, Mission Viejo, California 92692.

4. Defendant, Gruenbeck and Vogeler, is a professional association organized under the laws of the State of California, with its principal place of business located in Orange County, California, and can be served with process by serving its registered agent, 23120 Alicia Pkwy, #223, Mission Viejo, California 92692 and/or 7700 Irvine Center Drive, Ste 800, Irvine, California 92618.

5. Defendant, King Consulting Group, LLC, is a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located at 212 Louie Drive, Lafayette, Louisiana 70503. King Consulting Group, LLC may be served with process as provided by applicable law through its registered agent of process at 212 Louie Drive, Lafayette, Louisiana 70503. The members of King Consulting Group are Defendant Burt King, and upon information and belief, Defendant Asa Johnson based on representations made to the parties.

6. Defendant, Burt King, is an adult resident citizen of Lafayette, Louisiana, and can be served with process at 212 Louie Drive, Lafayette, Louisiana 70503.

7. Defendant Asa Johnson, is an adult resident citizen of Lafayette, Louisiana, and can be served with process at 329 Westgate Road, Lafayette, Louisiana 70506.

8. Defendant, BAFF Consultants, Inc., is a Michigan corporation with its primary place of business in Orange County, California. BAFF Consultants, Inc. may be served with process as provided by applicable law through its registered agent of process at 7545 Irvine Center Dr., Irvine, California 92618.

9. Defendant, Worldwide Capital Management Inc., is a California corporation with its primary place of business in Orange County, California. Worldwide Capital Management, Inc.

may be served with process as provided by applicable law through its registered agent of process 24 Long Fellow, Irvine, California 92620.

10. Defendant, Farhan A. Mirza, is an adult resident citizen of Orange County, California may be served with process at 745 Canyon Mist Lane, Anaheim, California 92808.

11. Defendant, Salman Vakil, is an adult resident citizen of Orange County, California and may be served with process at 280 S Willow Creek Lane, Anaheim, California 92808.

12. Defendants ABC Corporations 1-5 at all times relevant hereto are unidentified companies whose true identity and place of business are presently unknown, and which were involved in matters which are the subject of this litigation. Plaintiffs will amend this Complaint at such time as the identities of those ABC Corporation defendants become known throughout the course of continuing investigation and discovery.

13. Defendants designated as John Does 1 through 5 are, based upon information and belief, certain unknown and unnamed persons and/or entities who may be liable for the claims asserted herein, who included, but are not limited to, subcontractors, agents, servants, employees, representative affiliates, parents, subsidiaries, joint-tortfeasors, contractors, co-conspirators, joint adventurers, partners, stockholders, or any other related person or entity of the named Defendant and/or any and all other persons who may be liable to Plaintiffs for the claims asserted herein. Plaintiff will amend his Complaint once the identities of the unknown Defendants are learned.

## II. Jurisdiction & Venue

14. Jurisdiction is founded on diversity of citizenship and amount.

15. There is complete diversity of citizenship between Plaintiff and Defendants. Every issue of law and fact in this action is wholly between citizens of different states.

16.     This is a civil action involving, exclusive of interest and costs, a sum in excess of $75,000 as specified by 28 U.S.C. 1332 (a).

17.     This court possesses jurisdiction over this matter with respect to Plaintiffs' state law and common law claims based on the doctrine of supplemental jurisdiction, pursuant to 28 U.S.C. 1367.

18.     This court is the proper venue for this proceeding as a substantial part of the events or omissions giving rise to the claim occurred in the above-entitled judicial district, pursuant to 28 U.S.C. 1391 (b)(2).

### III. Facts

19.     Plaintiff Share Holders, LLC d/b/a Advantage Testing ("Advantage Testing") is a company that provides drug, alcohol, and industrial hygiene tests, including N95 respirator testing, to businesses across the state of Texas. Charlie Holder is the CEO and President of Advantage Testing.

20.     Due to the onset of the corona virus and need for face masks to stop and/or slow the spread of the virus, Advantage Testing became involved in providing personal protective equipment ("PPE") to the state of Texas, including but not limited to supplying KN95 face masks.

21.     On or about April 4, 2020 Plaintiffs were contacted by Defendant Salman Vakil of Defendant Worldwide Capital Management, Inc. ("Worldwide") regarding connecting Plaintiffs to KN95 face mask suppliers.

22.     Defendant Worldwide connected Plaintiffs with Defendants Thomas Gruenbeck and/or Gruenbeck and Vogeler (collectively referred to as "Gruenbeck") and Defendants Farhan Mirza and BAFF Consultants, Inc. ("BAFF") who represented that they would be able to supply and facilitate the sale of KN95 masks to Plaintiffs. Defendants represented that the masks were

stateside and would not have to be ordered from a foreign country. Because of this, Plaintiffs agreed to a higher price and delivery timeframe of two business days. Plaintiffs would never have entered into any agreement or ordered any masks if Defendants had to order the masks from China or any foreign country.

23. On or about April 5, 2020, Plaintiffs entered into a Purchase and Sale Agreement with Defendants BAFF and Gruenbeck for the purchase and sale of 500,000 KN95 masks at the price of $3.75 per unit, for a total purchase price of the sum of One Million Eight Hundred Seventy Five Thousand and No/100 ($1,875,000.00) wherein Gruenbeck would act as the Trust Attorney for facilitating and completing the transaction between the buyer and seller and BAFF would act as the Seller. It was emphasized by Plaintiffs, and agreed upon by the parties, that time was of the essence in delivery of the masks to Plaintiffs.

24. The Purchase and Sale Agreement provided that:

> Buyer shall send Seller a Purchase Order conforming with the above referenced terms and transmit a copy of the Purchase Order along with a One Hundred Percent (100%) payment of the entire transaction amount to TRUST ATTORNEY. After confirmation of receipt of deposit, funds TRUST ATTORNEY shall initiate order with Seller and return confirmation or order placement to Buyer. Seller shall inform Buyer of estimated delivery date, which is guaranteed to be no later than 11:59 p.m., (CENTRAL TIME) Wednesday, April 8, 2020. In the event the delivery is NOT met by the 11:59 p.m., Wednesday, April 8, 2020 guaranteed time, the price will be reduced to **$3.50 per unit** – which will be the total amount released to the Seller. After shipment is received by the logistics carrier and Bill of Lading transmitted to Buyer, Buyer herein authorizes TRUST ATTORNEY to release the sum of $1,750,000.00 (One Million Seven Hundred Fifty Thousand Dollars which is the purchase price minus the penalty amount. If the shipment arrives by the guaranteed time and is accepted by Buyer TRUST ATTORNEY shall release the remaining funds to Seller. If the shipment does not arrive on time and accepted by Buyer TRUST Attorney shall return the penalty amount of $125,000.00 (One Hundred Twenty Five Thousand Dollars) to Buyer via wire within 2 business days.

**Exhibit 1, Purchase and Sale Agreement**

25.     Pursuant to the Purchase and Sale Agreement, on April 6, 2020, Plaintiffs wired the sum of One Million Eight Hundred Seventy Five Thousand and No/100 ($1,875,000.00) to the Trust Attorney, Gruenbeck. **Exhibit 2, Wire Transfer to Trust Attorney**.

26.     On April 8, 2020, despite Plaintiffs continually seeking tracking confirmation, the masks did not arrive as agreed pursuant to the Purchase and Sale Agreement.

27.     Plaintiffs continued to demand delivery, and/or status for the next few days to Defendant BAFF, however, BAFF was unable to provide proof or status of the order or products whereabouts. Likewise, Defendant Gruenbeck went nearly silent regarding the same. **Exhibit 3, Demand Email**.

28.     On April 13, 2020, Plaintiffs demanded Gruenbeck provide proof of all funds held in the trust account and inquired when Plaintiffs could anticipate return of their funds held in trust.

29.     Gruenbeck responded to the April 13, 2020 demand stating that he needed to complete his due diligence regarding the status of the order prior to returning any funds.

30.     On April 14, 2020, Plaintiffs demanded Gruenbeck provide proof of all funds held in the trust account. **Exhibit 4, Demand for Proof of Funds**.

31.     On April 17, 2020, Plaintiffs sent additional correspondence to Gruenbeck, demanding return of the $1,875,000 to Plaintiffs. **Exhibit 5, Additional Demand for Proof of Funds**.

32.     On April 20, 2020, Plaintiffs and BAFF confirmed cancellation of the purchase order, providing confirmation of the same to Gruenbeck. Plaintiffs again demanded all funds be remitted immediately.

33.     On April 21, 2020 Gruenbeck admitted to Plaintiffs that he would not be able to provide proof of Plaintiffs $1,875,000 in its trust account. Gruenbeck admitted that on April 6, 2020, contrary to the terms of the Purchase and Sale Agreement, without any proof of the shipment being

received by the logistics carrier, nor any Bill of Lading transmitted to Plaintiffs, he had given Plaintiffs' One Million Two Hundred Fifty Thousand Dollars and No/100 ($1,250,000.00) to a company in Lafayette, Louisiana, Defendant King Consultants, Inc., Burt King, and Asa Johnson (collectively referred to as "King Defendants") and that he only had $625,000 of Plaintiffs' funds remaining in the trust account. To say that Plaintiffs were blindsided and shocked by this revelation would be an understatement, as King had not been party to any contract or agreement with Plaintiffs and was in fact entirely unknown to Plaintiffs.

34. On April 21, 2020, Gruenbeck provided confirmation of the wire transfer showing One Million Two Hundred Fifty Thousand Dollars and No/100 ($1,250,000.00) wired to King at a JP Morgan Bank located at 875 Saw Mill Road, Ardsley, New York 10502. **Exhibit 6, Wire Transfer to King**.

35. On April 21, 2020, Gruenbeck wired Plaintiffs the remaining $625,000.00.

36. Also on or about April 21, 2020, Plaintiff Charlie Holder made contact with Defendant King to demand return of the funds. Defendant King represented that he did not have access to the funds transferred to him, and that in fact Plaintiffs' funds were being held in a trust account in China.

37. Plaintiffs were shocked to learn of any inclusion or discussion of a Chinese company because Defendants always represented to Plaintiffs that the product they would be receiving was already in the United States.

38. On May 19, 2020, King wired $100,000 to Gruenbeck in two wire transfers of $50,000 each.

39. On May 19, 2020, Gruenbeck wired Plaintiffs $100,000, leaving a balance of $1,150,000 due to Plaintiffs of its original funds.

40. Plaintiffs have received no additional funds from Defendants and Plaintiffs continue to suffer as a result.

41. As a direct result of the actions and/or omissions of the Defendants as provided below, Plaintiffs have incurred financial expense and loss including but not limited to the use and benefit of its remaining $1,150,000.00 and over one million dollars in business opportunity losses.

42. As a further direct and proximate result of the actions and omissions of the Defendants, Plaintiffs have sustained mental and emotional distress, worry, anxiety, sleeplessness, nightmares, and such other injuries and extra-contractual damages as will be more fully shown at the trial of this cause.

43. As a further direct and proximate result of such actions and omissions on the part of the Defendants, Plaintiffs have been required to hire attorneys to represent them in this cause and have incurred expenses and costs of litigation and attorneys' fees.

### IV. Causes of Action

### Count I – Emergency Preliminary Injunctive Relief, or in the alternative, Temporary Restraining Order

44. The allegations contained in the foregoing paragraphs are incorporated herein as if reproduced in full.

45. The purpose of preliminary injunction is to provide injunctive relief until the merits of the case are resolved. Plaintiffs request for a preliminary injunction must demonstrate: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *Greenfiber v. Brooks*, 2002 WL 31834009 (W.D. La. Oct. 25, 2002).

46. The most compelling reason in favor of granting a preliminary injunction is the need to prevent the judicial process from being rendered futile by Defendants' actions or refusal to act. Here, Plaintiffs seek a preliminary injunction or in the alternative, a temporary restraining order because Plaintiffs have been informed that the King Defendants are in possession of 3.5 million masks purchased with Plaintiffs' funds. And if the King Defendants dispose of those masks before this Court's determination on the merits of Plaintiffs' claims, Plaintiffs only recourse to recoup their funds will be lost.

47. Plaintiffs' claims are likely to succeed on the merits based on the clear breach of performance of the contract and the King Defendants' conversion of Plaintiffs' funds and Plaintiffs will face irreparable injury of financial loss if the injunction or restraining order is denied. The injunction will serve the public interest in preserving equipment that should be in possession of the Plaintiffs to deliver to their contracts with governmental and private entities.

### Count II – Breach of Contract & Intentional/Willful Breach of Contract
### (BAFF & GRUENBECK)

48. The allegations contained in the foregoing paragraphs are incorporated herein as if reproduced in full.

49. Defendants BAFF and Gruenbeck entered into a written contract, "Purchase and Sale Agreement (**Exhibit 1**) with Plaintiffs to provide 500,000 KN95 masks to Plaintiffs at the price of $3.75 per mask, and/or $1,875,000.00.

50. In addition, pursuant to the terms of the Purchase and Sale Agreement, Gruenbeck was to act as the Trust Attorney, and he was to hold Plaintiffs' funds securely in his trust account. Gruenbeck only had authority to disburse the funds to the seller (BAFF) if two conditions occurred: (1) proof of the shipment being received by the logistics carrier, and (2) a Bill of Lading being provided to the Buyer (Plaintiffs).

51.    Plaintiffs at all times fully and in good faith performed their obligations under the Purchase and Sale Agreement.

52.    In direct violation of the Purchase and Sale Agreement, and with no apparent or actual authority, Gruenbeck disbursed $1,250,000 to Defendant King, who was not even a party to the contract, without any proof of the shipment being received by the logistics carrier, nor any Bill of Lading being provided to the Buyer (Plaintiffs).

53.    Seller, BAFF, never delivered any masks to Plaintiffs as promised, pursuant to the Purchase and Sale Agreement.

54.    As set forth herein and above, Defendants BAFF and Gruenbeck breached their contract with Plaintiffs by failing to timely provide the KN95 masks to Plaintiffs, and further by disbursing the funds to King, prematurely, and without authority.

55.    As a direct and proximate result of the Defendants BAFF and Gruenbeck's breach of contract, Plaintiffs have been caused to suffer damages which are to be hereinafter set out with more particularity.

56.    Contract law is premised on the Latin mantra *pacta sunt servanda* or Agreements must be kept.

57.    Defendants BAFF and Gruenbeck have not only breached their contractual agreements with Plaintiffs, but Defendants BAFF and Gruenbeck are guilty of willful, tortious breach of contract, defined as a breach so wrongful, egregious, without legal justification and in bad faith that it entitles Plaintiffs to punitive damages.

58.    Plaintiffs are entitled to all damages proven at trial resulting from Defendants BAFF and Gruenbeck breach and intentional breach of contract.

## Count III: Breach of Fiduciary Duty (GRUENBECK)

59. The allegations contained in the foregoing paragraphs are incorporated herein as if reproduced in full.

60. In certain formal relationships, such as an attorney-client or trustee relationship, a fiduciary duty arises as a matter of law. The term "fiduciary" is defined in the Uniform Fiduciaries Law, LSA–R.S. 9:3801(2), as follows: "Fiduciary" includes a trustee under any trust, expressed, implied, resulting or constructive, executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, office of a corporation, public or private, public officer, or any other persons acting in a fiduciary capacity for any person, trust or estate.

61. As the Trust Attorney charged with securely holding Plaintiffs funds and properly facilitating the purchase and sale between Plaintiffs and Seller Defendant BAFF, Gruenbeck owed a solemn fiduciary duty to Plaintiffs.

62. Gruenbeck breached said fiduciary duties by disbursing $1,250,000 to Defendant King, who was not the seller pursuant to the Purchase and Sale Agreement, and disbursing said funds without any proof of the shipment being received by the logistics carrier, nor any Bill of Lading being provided to the Buyer (Plaintiffs), all in direct violation of the Purchase and Sale Agreement. Defendants owed a duty to disclose Defendant King's involvement in agreement and transaction and to disclose any transfers of funds to seek permission from Plaintiffs to release said funds.

63. The wrongful conduct of Gruenbeck has damaged Plaintiffs and continues to damage Plaintiffs and Plaintiffs are entitled to all damages that can be proven at trial.

## Count IV: Breach of Good Faith and Fair Dealing

64. The Plaintiffs adopt and re-allege all prior paragraphs in this Complaint.

65. Defendants owed Plaintiffs a duty of good faith and fair dealing which is an implied covenant in the agreement between the parties and under the Uniform Commercial Code. UCC 1-201(19) & UCC 1-203.

66. The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness. Restatement of Contracts (Second) §§ 205, 100 (1981).

67. Defendants breached the duty of good faith and fair dealing owed to Plaintiffs based on their intentional and negligent conduct alleged above.

68. Plaintiffs suffered damages that were proximately caused by Defendants' breaches of the duty of good faith and fair dealing.

### Count V – Delictual Fraud, or in the alternative, Negligent Misrepresentation

69. The allegations contained in the foregoing paragraphs are incorporated herein as if reproduced in full.

70. For Plaintiffs to establish a claim of negligent misrepresentation, they must prove that (1) the defendant, in the course of its business or other matters in which it had pecuniary interest, supplied false information, (2) the defendant had a legal duty to supply correct information to the plaintiff, (3) the defendant breached its duty, which can be breached by omission as well as by affirmative misrepresentation, and (4) the plaintiff suffered damages or pecuniary loss as a result of the its justifiable reliance upon the omission or affirmative misrepresentation. *Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g Associates, Inc.*, 962 So. 2d 1089, 1092 (La. App. 4 Cir. 6/20/07).

71. To recover under a cause of action in delictual fraud, Plaintiffs must prove three elements: (1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable

reliance with resultant injury. *Becnel v. Grodner*, 982 So. 2d 891, 894 (La. App. 4 Cir. 4/2/08) (citing See *Newport Ltd. v. Sears Roebuck & Co.*, 6 F.3d 1058, 1068 (5th Cir.1993).

72. Defendants owed a duty to Plaintiffs to disclose the actual parties involved in the agreement and when the transfer of Plaintiffs' funds were made pursuant to the agreement.

73. Instead, Defendants have intentionally and/or negligently misrepresented material facts during the court of their business together. Defendants failed to exercise reasonable care and were negligent in making the above-referenced representations regarding where the masks were manufactured, who was involved in the agreement, who was producing the masks, and most damagingly, when and where the transfer of funds was made. Or Defendants intentionally sought to hide the nature of the agreement and the improper transfer of funds to the unknown King Defendants.

74. In either case, Plaintiffs reasonably and justifiably relied to their detriment on the negligent and/or fraudulent representations made to the by Defendants and entrusted the Defendants with $1,875,000 to provide the mask as agreed.

75. As a direct and proximate result of the Defendants' intentional fraud, or in the alternative, negligent misrepresentations, Plaintiffs have been caused to suffer damage proven at trial on the merits.

### Count VI – Civil Conspiracy

76. The allegations contained in the foregoing paragraphs are incorporated herein as if reproduced in full.

77. In order to impose liability for civil conspiracy in Louisiana, Plaintiffs must prove that (1) an agreement existed with one or more persons to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in plaintiff's injury; and (4) there was an agreement as to

the intended outcome or result; see also La. Civ. Code art. 2324. "Evidence of ... a conspiracy can be actual knowledge, overt actions with another, such as arming oneself in anticipation of apprehension, or inferred from the knowledge of the alleged co-conspirator of the impropriety of the actions taken by the other co-conspirator." *Stephens v. Bail Enf't*, 690 So. 2d 124, 131 (La. Ct. App. 1997).

78. The Defendants entered into one or more agreements among themselves and/or with others to breach the Purchase and Sale Agreement and never intended to provide any mask to Plaintiffs and instead use the funds provided by Plaintiffs for their own gain.

79. The Defendants took overt steps and acted in furtherance of the conspiracy in the ways alleged herein by intentionally transferring the funds to the King Defendants and refusing to notify Plaintiffs of the transfer unknown and undisclosed party or parties, King Defendants.

80. As a direct and proximate result of the conspiracy entered into and carried out by the Defendants, Plaintiffs have suffered and continue to suffer substantial damages off loss profit and loss of use of the funds transferred to Defendants, for which the Defendants are liable.

81. The intentional and egregious nature of the Defendants' conduct warrants the imposition of punitive damages against them.

## Count VII - Conversion

82. The allegations contained in the foregoing paragraphs are incorporated herein as if reproduced in full.

83. A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used

improperly; or 7) ownership is asserted over the chattel. *Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 98-0343 (La. 12/1/98), 721 So. 2d 853, 857.

84. Here, Defendants converted Plaintiffs' funds by transferring the funds out of trust to the King Defendants without authorization and in violation of the Purchase and Sale Agreement. Upon information and belief the funds have been used by Defendants without authority from Plaintiffs and the funds have not been returned to the Plaintiffs as demanded by the Plaintiffs.

85. As a result of Defendants conversion, Plaintiffs have suffered damages to be proven at trial.

### Count VIII – Unjust Enrichment

86. The allegations contained in the foregoing paragraphs are incorporated herein as if reproduced in full.

87. As a direct result of the disbursement of $1,250,000 of Plaintiffs funds held in trust, in violation of the Purchase and Sale Agreement, Defendants have been unjustly enriched at the Plaintiffs' expense.

88. Because there was no contract between Plaintiffs and Defendants King Consulting Group and Burt King, those Defendants were unjustly enriched by the transfer of $1,250,000 to them without providing any mask to Plaintiffs and unjustly enriched when King Defendants refused and failed to return the money transferred to them.

89. Pursuant to the Count IX below requesting an accounting of the funds disbursed, the accounting is necessary to determine the specifics of which Defendants, if not all, were unjustly enriched.

90. As a proximate result of the Defendants unjust enrichment, Plaintiffs have suffered damages to be shown at trial.

### Count IX - Accounting

91. The allegations contained in the foregoing paragraphs are incorporated herein as if reproduced in full.

92. Due to the nature of the $1,875,000 wire transfer from Plaintiffs to trust attorney Gruenbeck, and the disbursement of $1,250,000 in violation of the parties Purchase and Sale Agreement, Plaintiffs request an accounting on all funds disbursed in violation of the Purchase and Sale Agreement to determine the whereabouts of all funds, and preserve all funds possible to prevent further damage to Plaintiffs.

### Count X – Intentional Infliction of Emotional Distress

93. The allegations contained in the foregoing paragraphs are incorporated herein as if reproduced in full.

94. The actions of the Defendants were intentional, wanton, and evoke outrage and revulsion, and were so extreme and outrageous in character as to go beyond the bounds of decency.

95. The conduct of the Defendants caused Charlie Holder and the financially invested members of Share Holders, LLC to suffer severe emotional distress.

96. The intentional and egregious nature of the Defendants' conduct warrants the imposition of punitive damages against them.

### Count XI – Negligent Infliction of Emotional Distress

97. The allegations contained in the foregoing paragraphs are incorporated herein as if reproduced in full.

98. Defendants knew or should have known that their conduct in making numerous misrepresentations to Plaintiffs regarding their intention or lack thereof to perform as required under the Purchase and Sale Agreement, in addition to Worldwide, in connecting Plaintiffs to

BAFF and Gruenbeck representing the same as trustworthy, along with King's intentions or lack thereof to fulfill the purchase order and/or return the funds, upon discovery, cause extreme and undue emotional distress.

99.     Due to the nature of the parties' contract and the representations of Defendants, the emotional distress, anxiety, worry, and mental anguish of Charlie Holder and members of Share Holders, LLC was reasonably foreseeable as a result of the Defendants actions.

100.    Charlie Holder and Share Holders, LLC has suffered extreme emotional distress and mental anguish as a direct result of Defendants negligence, as set forth by the events described herein. Charlie Holder and other financially invested members of Share Holders, LLC have lost sleep, suffered from depression, suffered headaches, suffered from anxiety, and has suffered in other ways to be shown at trial of this cause.

101.    Therefore, the Defendants are liable to Plaintiffs for negligent infliction of emotional distress, in additional to all damages proven at trial in this matter.

## V. Damages

102.    As a direct and proximate result of the actions and omissions of the Defendants set forth herein, Plaintiffs have incurred financial expense and loss. As a further direct and proximate result of such actions and omissions on the part of the Defendants, Plaintiffs have been required to hire attorneys to represent them in this cause and have incurred expenses, costs of litigation and attorneys fees. As a further direct and proximate result of the actions and omissions of the Defendants, Plaintiffs have sustained mental and emotion distress, worry, anxiety, sleeplessness, nightmares, and such other injuries and extra-contractual damages as may be more fully shown at the trial of this cause.

## VI. Prayer for Relief

Plaintiffs, Charlie Holder and Share Holders, LLC d/b/a Advantage Testing, demand judgment against the Defendants jointly, severally, and collectively, for all of the following:

a) Compensatory damages for all injuries suffered as a result of Defendants wrongdoing;

b) Emotional distress damages;

c) Prejudgment and post-judgment interest;

d) Attorneys' fees, expenses and costs of litigation;

e) Punitive damages; and

f) Any and all such other relief, general or specific to which Plaintiffs are entitled under the laws of the United States of America and the State of Louisiana.

Respectfully submitted this 13th day of July, 2020.

        **CHARLIE HOLDER and SHARE HOLDERS, LLC d/b/a ADVANTAGE TESTING,** *Plaintiffs*

        */s/ Carmen M. Rodriguez*
        GARY J. RUSSO #10828
        CARMEN M. RODRIGUEZ #22573
        JONES WALKER LLP
        600 Jefferson Street, Suite 1600
        Lafayette, LA 70501
        Telephone: 337.593.7600
        Facsimile:   337.593.7601
        Email: carmenrodriguez@joneswalker.com

*Pro Hac Vice Application Impending:*

CORY N. FERRAEZ, MSB #104770
**HOLMES, MCLELLAND & FERRAEZ, PLLC**
601 East Central Avenue
Petal, MS 39465
Telephone: 601-909-9256
Facsimile: 601-510-9677
Email: cory@hmflawfirm.com